COPY

1  GLENN D. POMERANTZ (SBN 112503)
   Glenn.Pomerantz@mto.com
2  KELLY M. KLAUS (SBN 161091)
   Kelly.Klaus@mto.com
3  MUNGER, TOLLES & OLSON LLP
   355 South Grand Avenue, Thirty-Fifth Floor
4  Los Angeles, CA 90071-1560
   Tel: (213) 683-9100; Fax: (213) 687-3702
5
   DANIEL E. ROBBINS (SBN 156934)
6  Dan_Robbins@mpaa.org
   BENJAMIN S. SHEFFNER (SBN 212629)
7  Ben_Sheffner@mpaa.org
   15301 Ventura Boulevard, Building E
8  Sherman Oaks, California 91403-3102
   Tel: (818) 995-6600; Fax: (818) 285-4403
9
   Attorneys for Plaintiffs

FILED
11 APR -4 AM 11:52
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY: ___

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| WARNER BROS. ENTERTAINMENT INC., COLUMBIA PICTURES INDUSTRIES, INC., DISNEY ENTERPRISES, INC., PARAMOUNT PICTURES CORPORATION, TWENTIETH CENTURY FOX FILM CORPORATION, and UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,<br><br>Plaintiffs,<br><br>vs.<br><br>WTV SYSTEMS, INC. and WTV SYSTEMS, LLC d/b/a ZEDIVA, and VENKATESH SRINIVASAN,<br><br>Defendants. | CASE NO. CV11-02817 JFW (Ex)<br><br>**COMPLAINT FOR COPYRIGHT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT

The Court has original subject matter jurisdiction over all claims pursuant to 17 U.S.C. §§ 101, *et seq.* and 28 U.S.C. §§ 1331 and 1338(a). Plaintiffs Warner Bros. Entertainment Inc., Columbia Pictures Industries, Inc., Disney Enterprises, Inc., Paramount Pictures Corporation, Twentieth Century Fox Film Corporation, and Universal City Studios Productions LLLP (collectively, "Plaintiffs" or "Studios"), by their attorneys, for their complaint against WTV Systems, Inc. and WTV Systems, LLC d/b/a Zediva ("Zediva"), and Venkatesh Srinivasan (collectively, "Defendants") allege, on personal knowledge as to themselves and information and belief as to others, as follows:

## NATURE OF THE ACTION

1. Defendants operate a commercial video-on-demand ("VOD") service—found at http://www.zediva.com—that streams Plaintiffs' movies on demand to paying customers over the Internet. Defendants promote their service as bringing "new release and popular movies to the Internet"[1] and focus their marketing pitch on the fact that Zediva users can "instantly watch new movies much earlier (often several weeks or months)" than they can on authorized services such as Netflix.[2]

2. Unlike Netflix and other licensed online services, Defendants' business is based on infringing Plaintiffs' rights. Defendants transmit performances of Plaintiffs' copyrighted works to members of the public without Plaintiffs' authorization. Defendants thereby infringe Plaintiffs' exclusive rights to perform their works publicly, 17 U.S.C. §§ 101, 106(4). Plaintiffs and their affiliates invest billions of dollars in creating copyrighted motion pictures. Defendants exploit that investment without any authorization from Plaintiffs, while pocketing all of the money Defendants charge Zediva users for unauthorized performances of Plaintiffs' works.

---

[1] http://www.zediva.com/about (last visited Apr. 1, 2011).
[2] http://www.zediva.com/faq (last visited Apr. 1, 2011).

3.    Defendants claim they do not have to obtain a license from and compensate Plaintiffs for exploiting their rights because Zediva purportedly is a "movie rental service," which involves a user "renting both a DVD and DVD player in [Defendants'] data center,"[3] and Zediva transmitting the movie to the user "over the Internet using streaming technologies."[4]

4.    Defendants' comparison of the Zediva service to a rental store is disingenuous, and Defendants are attempting to rely on technical gimmicks in an effort to avoid complying with U.S. Copyright Law. Defendants operate an online VOD service, not a neighborhood rental store. Unlike Zediva, rental stores do not transmit performances of movies to the public "over the Internet using streaming technologies."[5] A rental store or any other establishment would also need a license to do so.

5.    Under the plain language of the Copyright Act, Defendants are exercising Plaintiffs' exclusive rights to publicly perform their copyrighted works. Defendants' transmissions of the performances of Plaintiffs' works are to the public regardless of whether Defendants' users receive those performances "in the same place or in separate places and at the same time or at different times." 17 U.S.C. § 101 (definition of "[t]o perform … a work 'publicly,'" clause (2)). Exercising Plaintiffs' exclusive rights without their permission—something Defendants do not have and claim they do not need—is copyright infringement.

6.    Defendants' flagrant violation of Plaintiffs' exclusive rights directly undermines Plaintiffs' present and continuing development of a legitimate market for the exploitation of Plaintiffs' rights.

---

[3] http://www.zediva.com/faq (last visited Apr. 1, 2011).
[4] Letter from Venkatesh Srinivasan to Julius Genachowski, FCC Chairman at 1 (Dec. 10, 2010) ("FCC Letter"), http://www.zediva.com/ZedivaFCCLetter-12102010.pdf (last visited Apr. 1, 2011).
[5] FCC Letter at 1.

## THE PARTIES

7. Plaintiff Warner Bros. Entertainment Inc. is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business located in Burbank, California.

8. Plaintiff Columbia Pictures Industries, Inc. is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business located in Culver City, California.

9. Plaintiff Disney Enterprises, Inc. is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business located in Burbank, California.

10. Plaintiff Paramount Pictures Corporation is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business located in Los Angeles, California.

11. Plaintiff Twentieth Century Fox Film Corporation is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business located in Los Angeles, California.

12. Plaintiff Universal City Studios Productions LLLP is a limited liability limited partnership duly organized under the laws of the State of Delaware with its principal place of business located in Universal City, California.

13. Plaintiffs and/or their affiliates own or control the copyrights and/or the relevant exclusive rights in the works at issue in this case under the United States copyright laws. Plaintiffs or their licensors have obtained Certificates of Copyright Registration from the Register of Copyrights for their works. Attached hereto as Exhibit A is a list of certain of Plaintiffs' copyrighted works that Defendants have infringed by the acts complained of herein. Exhibit A identifies by number the Certificates of Copyright Registration issued to Plaintiffs or their licensors.

14. On information and belief, Defendant WTV Systems, Inc. is incorporated under the laws of the State of Delaware with its principal place of business at 1549 Bedford Avenue, Sunnyvale, California 94807.

15. On information and belief, Defendant WTV Systems, LLC is incorporated under the laws of the State of Delaware with its principal place of business at 1549 Bedford Avenue, Sunnyvale, California 94807.

16. On information and belief, Defendant Venkatesh Srinivasan's principal place of residency is 1549 Bedford Avenue, Sunnyvale, California 94807.

## JURISDICTION AND VENUE

17. The Court has subject matter jurisdiction over the federal law cause of action pleaded herein pursuant to 28 U.S.C. §§ 1331 (federal question), and 1338(a) (any act of Congress relating to copyright), and pursuant to the Copyright Act, 17 U.S.C. §§ 101, *et seq.*

18. This Court has personal jurisdiction over Defendants, and venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) because, *inter alia,* (a) Defendants and/or their agents are doing business in this District; and (b) a substantial part of the events or omissions giving rise to this lawsuit, as well as substantial injury to Plaintiffs, have occurred or will occur in interstate commerce, in the State of California, and in the Central District of California. Venue also is proper in this District pursuant to 28 U.S.C. § 1400(a) because Defendants may be found in this District in light of their extensive commercial activities here.

## BACKGROUND FACTS

**Plaintiffs and their Copyrighted Works**

19. Plaintiffs, directly or through their affiliates, are engaged in the business of developing, producing, and distributing, and licensing to others the right to distribute and exhibit, copyrighted motion pictures in the United States and throughout the world.

COMPLAINT

20. Plaintiffs own or have the exclusive rights in the United States to, among other things, publicly perform the copyrighted works at issue in this action, including by means of streaming those works over the Internet to the public. Defendants have not received any authorization, permission or consent to publicly perform the Plaintiffs' copyrighted works at issue in this lawsuit.

21. Plaintiffs, either directly or through their affiliates and/or licensees, distribute and publicly perform their copyrighted works in various forms, including, without limitation, for exhibition in theaters; through television broadcasts; through cable and direct-to-home satellite services (including basic, premium, "pay-per-view" and "video on demand" services); and through authorized, licensed Internet-based services such as Netflix, Apple iTunes, Amazon VOD services, Microsoft Xbox LIVE Marketplace, Blockbuster On Demand, CinemaNow, and the Sony Playstation Network. Plaintiffs also distribute their works to the home viewing market, including by selling copies of the motion pictures on tangible products, such as DVDs and Blu-ray discs, and by licensing digital downloads through various services.

22. Plaintiffs have invested (and continue to invest) substantial sums of money and effort each year to develop, produce, distribute and publicly perform their motion pictures which are protected under copyright and other laws. Defendants' illegal actions, as described herein, infringe upon Plaintiffs' exclusive rights and deprive Plaintiffs of the economic value of those rights.

**The Zediva Service**

***Defendants Transmit Plaintiffs' Copyrighted Content to the Public***

23. Defendants operate Zediva, a web site located on the Internet at http://www.zediva.com. Defendants officially launched their service on March 16, 2011.[6]

---

[6] http://zedivamovies.blogspot.com/2011/03/weve-launched.html (last visited Apr. 1, 2011).

24. Defendants describe their service as a way to "watch new movies online. Just pick the movie you want to watch and enjoy."[7] As Defendant Srinivasan states, "[o]ur goal is to have the top 100 movies of the last 12 months at any time," providing "immediate access to the most current and popular blockbusters."[8] Defendants' "Terms & Conditions of Use" refer to Plaintiffs as purported "third party content providers"[9] whose content is critical to Defendants' business.

25. Defendants' advertising clearly shows they offer to transmit performances of popular motion picture releases:



---

[7] http://www.facebook.com/apps/application.php?id=163946686950855#!/apps/application.php?id=163946686950855&sk=info (last visited Apr. 1, 2011).

[8] http://alltopstartups.com/2011/03/23/zediva-is-the-new-netflix-with-a-controversial-twist/ (last visited Apr. 1, 2011); http://www.xconomy.com/san-francisco/2011/03/16/zediva-launches-online-dvd-viewing/ (same).

[9] http://www.zediva.com/tou (last visited Apr. 1, 2011).











---

[10] http://w1.zediva.com/splash/index.php (last visited Apr. 1, 2011); http://w1.zediva.com/splash/works.html (same).

26. Defendants promote their unauthorized service as allowing users to watch new movies much earlier—"often several weeks or months"—than they could with authorized online services. Defendants currently charge as little as a dollar per streamed work, when a user purchases a "bundle" of streams of 10 different movies.[11] Defendants' prices may be half (or less than half) of the prices that licensed services charge.

27. As *Time Magazine* noted on its "Techland" blog, the reason that Defendants can "shave[] down" their pricing is because they "cut[] movie studios out of the equation" and do not "negotiat[e] streaming rights."[12]

28. Defendants digitally transmit content to members of the public through Internet streaming, much the same as authorized services that have licensed these rights from Plaintiffs.

29. Defendants stream performances of Plaintiffs' copyrighted works from the same DVD to numerous different members of the public.

30. By way of example, Defendants' website describes a basic "rental" period of 14 days. The user has access to the movie on the DVD for four hours at a time, or until the user's playback is paused for an extended time period; in either event, Defendants' service deems the particular DVD to be "returned" and available for streaming to other users.[13]

**Defendants' Announced Plans to Expand Their Service**

31. Defendants plan to expand their user base by increasing the number of devices to which they will stream Plaintiffs' works. Defendants state that the Zediva service is "limited to PC, MAC and Google TV" and handheld, cellular "Android

---

[11] http://www.zediva.com/faq (last visited Apr. 1, 2011); http://w1.zediva.com/splash/pricing.html (same).

[12] http://techland.time.com/2011/03/16/zedivas-movie-rentals-are-50-cheaper-than-itunes/#ixzz1HqSGXAfx (last visited Apr. 1, 2011).

[13] http://www.zediva.com/faq (last visited Apr. 1, 2011). Defendants say that this "is out of consideration to other users who may be waiting to rent the DVD." *Id.*

devices," and is "working hard to add support for iPhone/iPad and game consoles like Xbox, PS3," and "hope[s] to quickly expand the number of platforms and devices we can serve in 2011."[14]

### *Zediva Founder and CEO Venkatesh Srinivasan's Active Participation in and Control of Zediva's Infringing Activities*

32. Defendant Srinivasan is Zediva's Founder and CEO. Srinivasan directs, controls, ratifies, and participates in Zediva's infringing activity.

33. Srinivasan has been personally involved in and personally responsible for (a) Zediva's decision to stream the Plaintiffs' copyrighted works over the Internet without Plaintiffs' consent; (b) the development of Zediva's business model and technological systems employed by Zediva in the infringement of Plaintiffs' copyrights; (c) the solicitation of financial support for the infringing Zediva service; (d) the widespread promotion of Zediva's infringing service through public appearances and statements to the press and others; and (e) the decision to continue and to expand Zediva's infringing activity despite widespread reports regarding the service's illegal nature. Srinivasan spent several years leading a team that developed the infringing Zediva service; he has personally supervised, and has a direct and personal financial interest in, its infringing activities.

34. As Srinivasan personally posted on Zediva's blog, http://zedivamovies.blogspot.com/, he created and developed Zediva's infringing business model, and the "rest as they say is history. We set out to build that service - and with a few tweaks here, and a modification there, Zediva was born."[15] Srinivasan played a central role in the development of Zediva's technology which facilitates its infringing conduct. He is listed as an "inventor" on the patent

---

[14] http://www.zediva.com/about (last visited Apr. 1, 2011); http://www.zediva.com/faq (same).
[15] http://zedivamovies.blogspot.com/2011/03/genesis-of-zediva.html (last visited Apr. 1, 2011).

application for the technology underlying the Zediva service.[16] Indeed, in many respects, Zediva and Srinivasan are one and the same. According to Zediva's own SEC "Form D" filing, Defendant WTV Systems, LLC (along with WTV Systems, Inc., "Zediva") and Defendant Srinivasan share the same address.

35. Srinivasan plays a core, central role in Zediva's infringing activities. Zediva's website lists five key employees, and Srinivasan is at the top of even that short list.[17] Srinivasan is intimately involved in the company's day-to-day operations. After Zediva's servers crashed when the company launched out of beta, Srinivasan personally posted on Zediva's blog that the company's news blitz "drove huge volumes of traffic our way, and our servers got overwhelmed," but that they were "back in business just after midnight" and will "build the service you want, and get you off that waiting list as soon as we can."[18]

36. Srinivasan has been quoted in a flurry of press on Zediva's recent launch. Srinivasan repeatedly (and erroneously) has compared Zediva to using a long remote control over the Internet.[19] Srinivasan also has promoted the Zediva service as allowing users to avoid "pay[ing] premium prices" for online streaming,[20] and as allowing users to watch movies earlier than other streaming sites because "we are not party" to those "contractual agreement[s]" that the Studios have with authorized streaming services.[21]

---

[16] Remote Rental of Digital Content Peripheral Storage Entities, U.S. Patent Application No. US 2010/0125529 AI, at 1 (filed May 20, 2010)..

[17] http://www.zediva.com/about (last visited Apr. 1, 2011).

[18] http://zedivamovies.blogspot.com/2011/03/launch-day-recap.html (last visited Apr. 1, 2011).

[19] http://www.washingtonpost.com/blogs/faster-forward/post/zediva-offers-new-approach-to-online-movies/2011/03/16/AB3sX6e_blog.html (last visited Apr. 1, 2011) ("It's like watching with a long cable and a long remote control."); FCC Letter at 1 (Zediva like "a really really long video cable and really long remote control cable connected to the DVD player.").

[20] http://hollywooddaily.us/2011/03/17/zediva-streams-new-releases-before-netlflix-and-redbox/ (last visited Apr. 1, 2011).

[21] http://business.financialpost.com/2011/03/16/zediva-launches-netflix-rival/ (last visited Apr. 1, 2011).

37. Srinivasan has been and is the primary actor in the activities of Zediva that give rise to Plaintiffs' claims; he has had knowledge of, consented to and exercised control over Zediva's infringing activities.

### *Defendants' Conduct Causes Immediate and Irreparable Harm to Plaintiffs*

38. The significant harm caused by Defendants' conduct is both immediate and irreparable to Plaintiffs' exclusive rights protected under federal law. The Zediva service directly supplants and undermines Plaintiffs' and their authorized licensees' offering of digital Studio content to consumers, including authorized online streaming services, video-on-demand channels, DVD rentals, and other platforms. Indeed, in a recent letter to the FCC, Srinivasan conceded that Zediva "may be perceived to directly compete with the Video-on-Demand service, PayPerView or other PayTV services offered by cable providers and, in some cases, the providers of fiber networks and wireless networks."[22] Defendants' illegal service threatens to undermine these present and potential legitimate channels, at significant cost to Plaintiffs and their licensees.

39. By characterizing Zediva as a legitimate and lawful competitor to licensed online services and as "fully compliant with the law,"[23] Defendants threaten to confuse customers and the public and drive up early and immediate adoption of the Zediva service by numerous additional end users, causing even greater immediate and irreparable injury to Plaintiffs.

### FIRST CAUSE OF ACTION
### (Copyright Infringement, 17 U.S.C. §§ 106(4) and 501)

40. Plaintiffs incorporate herein by reference each and every averment contained in paragraphs 1 through 39 inclusive.

---

[22] FCC Letter at 1.

[23] http://www.sfgate.com/cgi-bin/article.cgi?f=/c/a/2011/03/22/BU6Q1IE40J.DTL&type=tech (last visited Apr. 1, 2011).

37. Srinivasan has been and is the primary actor in the activities of Zediva that give rise to Plaintiffs' claims; he has had knowledge of, consented to and exercised control over Zediva's infringing activities.

### *Defendants' Conduct Causes Immediate and Irreparable Harm to Plaintiffs*

38. The significant harm caused by Defendants' conduct is both immediate and irreparable to Plaintiffs' exclusive rights protected under federal law. The Zediva service directly supplants and undermines Plaintiffs' and their authorized licensees' offering of digital Studio content to consumers, including authorized online streaming services, video-on-demand channels, DVD rentals, and other platforms. Indeed, in a recent letter to the FCC, Srinivasan conceded that Zediva "may be perceived to directly compete with the Video-on-Demand service, PayPerView or other PayTV services offered by cable providers and, in some cases, the providers of fiber networks and wireless networks."[22] Defendants' illegal service threatens to undermine these present and potential legitimate channels, at significant cost to Plaintiffs and their licensees.

39. By characterizing Zediva as a legitimate and lawful competitor to licensed online services and as "fully compliant with the law,"[23] Defendants threaten to confuse customers and the public and drive up early and immediate adoption of the Zediva service by numerous additional end users, causing even greater immediate and irreparable injury to Plaintiffs.

### FIRST CAUSE OF ACTION
### (Copyright Infringement, 17 U.S.C. §§ 106(4) and 501)

40. Plaintiffs incorporate herein by reference each and every averment contained in paragraphs 1 through 39 inclusive.

---

[22] FCC Letter at 1.

[23] http://www.sfgate.com/cgi-bin/article.cgi?f=/c/a/2011/03/22/BU6Q1IE40J.DTL&type=tech (last visited Apr. 1, 2011).

41. Through their conduct averred herein, Defendants have infringed Plaintiffs' copyrights in their works by publicly performing Plaintiffs' copyrighted works, without authorization from Plaintiffs, in violation of 17 U.S.C. §§106(4) and 501.

42. Each infringement by Defendants of Plaintiffs' copyrighted works constitutes a separate and distinct act of infringement.

43. Defendants' acts of infringement are willful, in disregard of and with indifference to the rights of Plaintiffs.

44. As a direct and proximate result of the infringements by Defendants, Plaintiffs are entitled to damages and Defendants' profits in amounts to be proven at trial which are not currently ascertainable.

45. Alternatively, Plaintiffs are entitled to the maximum statutory damages in the amount of $150,000 per statutory award, or for such other amounts as may be proper under 17 U.S.C. § 504.

46. Plaintiffs further are entitled to recover their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

47. As a direct and proximate result of the foregoing acts and conduct, Plaintiffs have sustained and will continue to sustain substantial, immediate and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiffs' rights in their copyrighted works. Plaintiffs are entitled to preliminary and permanent injunctive relief.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray for judgment against Defendants and against all of their affiliates, agents, servants, employees, partners and all persons in active concert or participation with them, for the following relief:

1. For Plaintiffs' damages and Defendants profits in such amount as may be found; alternatively, for maximum statutory damages in the amount of $150,000 per statutory award, or for such other amounts as may be proper pursuant to 17 U.S.C. § 504(c).

2. For preliminary and permanent injunctions enjoining Defendants, and all persons acting in concert or participation with them, from publicly performing or otherwise infringing in any manner Plaintiffs' copyrighted works.

3. An order directing that Defendants file with the Court and serve upon counsel for Plaintiffs within thirty (30) days after the entry of such order or judgment, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction

4. For prejudgment interest according to law.

5. For Plaintiffs' attorneys' fees and full costs incurred in this action pursuant to 17 U.S.C. § 505.

6. For all such further and additional relief, in law or in equity, to which Plaintiffs may be entitled or which the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby request a trial by jury on all issues triable by jury.

DATED: April 4, 2011                    MUNGER, TOLLES & OLSON LLP

By: _____
GLENN D. POMERANTZ
Attorneys for Plaintiffs

# Exhibit A

| Plaintiff | Title | U.S. Copyright Registration Number |
|---|---|---|
| Warner Bros. Entertainment Inc. | Book of Eli, The | PA 1-659-118 |
| Warner Bros. Entertainment Inc. | Cop Out | PA 1-703-015 |
| Warner Bros. Entertainment Inc. | Dark Knight, The | PA 1-606-857 |
| Warner Bros. Entertainment Inc. | Hereafter | PRE000003929 |
| Warner Bros. Entertainment Inc. | Invention of Lying, The | PA 1-647-143 |
| Warner Bros. Entertainment Inc. | Invictus | PA 1-684-663 |
| Warner Bros. Entertainment Inc. | Life As We Know It | PA 1-709-859 |
| Warner Bros. Entertainment Inc. | Sherlock Holmes | PA 1-656-999 |
| Warner Bros. Entertainment Inc. | Yogi Bear | PRE000004120 |
| Columbia Pictures Industries, Inc. | Bounty Hunter, The | PA 1-667-359 |
| Columbia Pictures Industries, Inc. | Eat Pray Love | PA 1-689-770 |
| Columbia Pictures Industries, Inc. | Grown Ups | PA 1-682-702 |
| Columbia Pictures Industries, Inc. | How Do You Know | PA 1-712-186 |
| Columbia Pictures Industries, Inc. | Karate Kid, The | PA 1-680-527 |
| Columbia Pictures Industries, Inc. | Other Guys, The | PA 1-689-167 |
| Columbia Pictures Industries, Inc. | Salt | PA 1-687-265 |
| Columbia Pictures Industries, Inc. | Social Network, The | PA 1-698-016 |
| Columbia Pictures Industries, Inc. | Tourist, The | PA 1-712-189 |
| Disney Enterprises, Inc. | Alice in Wonderland | PA 1-675-924 |
| Disney Enterprises, Inc. | Last Song, The | PA 1-679-726 |
| Disney Enterprises, Inc. | Prince of Persia: The Sands of Time | PA 1-689-164 |
| Disney Enterprises, Inc. | Secretariat | PA 1-706-963 |
| Disney Enterprises, Inc. | Sorcerer's Apprentice, The | PA 1-691-405 |
| Disney Enterprises, Inc. | Toy Story 3 | PA 1-688-323 |
| Disney Enterprises, Inc. | When in Rome | PA 1-667-869 |
| Disney Enterprises, Inc. | You Again | PA 1-702-216 |
| Paramount Pictures Corporation | Jackass 3D | PA 1-700-556 |
| Paramount Pictures Corporation | Last Airbender, The | PA 1-683-283 |
| Paramount Pictures Corporation | Morning Glory | PA 1-706-205 |
| Paramount Pictures Corporation | Paranormal Activity 2 | PA 1-701-514 |
| Paramount Pictures Corporation | Shutter Island | PA 1-663-207 |
| Twentieth Century Fox Film Corporation | 127 Hours | PA 1-705-419 |

| Plaintiff | Title | U.S. Copyright Registration Number |
|---|---|---|
| Twentieth Century Fox Film Corporation | A-Team, The | PA 1-679-727 |
| Twentieth Century Fox Film Corporation | Avatar | PA 1-395-488 |
| Twentieth Century Fox Film Corporation | Crazy Heart | PA 1-655-279 |
| Twentieth Century Fox Film Corporation | Date Night | PA 1-669-165 |
| Twentieth Century Fox Film Corporation | Diary of a Wimpy Kid | PA 1-667-079 |
| Twentieth Century Fox Film Corporation | Knight and Day | PA 1-681-723 |
| Twentieth Century Fox Film Corporation | Love and Other Drugs | PA 1-706-799 |
| Twentieth Century Fox Film Corporation | Marmaduke | PA 1-678-666 |
| Twentieth Century Fox Film Corporation | Predators | PA 1-683-294 |
| Twentieth Century Fox Film Corporation | Ramona and Beezus | PA 1-687-191 |
| Twentieth Century Fox Film Corporation | Unstoppable | PA 1-705-418 |
| Twentieth Century Fox Film Corporation | Vampires Suck | PA 1-689-743 |
| Twentieth Century Fox Film Corporation | Wall Street: Money Never Sleeps | PA 1-693-817 |
| Universal City Studios Productions LLLP | American, The | PA 1-697-735 |
| Universal City Studios Productions LLLP | Babies | PA 1-690-561 |
| Universal City Studios Productions LLLP | Charlie St. Cloud | PA 1-690-720 |
| Universal City Studios Productions LLLP | Despicable Me | PRE000003604 |
| Universal City Studios Productions LLLP | Get Him to the Greek | PRE000003528 |
| Universal City Studios Productions LLLP | It's Complicated | PA 1-656-395 |
| Universal City Studios Productions LLLP | Kids Are All Right, The | PAu 3-457-290 |
| Universal City Studios Productions LLLP | Love Happens | PA 1-644-272 |
| Universal City Studios Productions LLLP | MacGruber | PA 1-685-732 |
| Universal City Studios Productions LLLP | My Soul to Take | PA 1-703-035 |
| Universal City Studios Productions LLLP | Robin Hood | PRE000003429 |
| Universal City Studios Productions LLLP | Scott Pilgrim vs. the World | PA 1-692-200 |