GLENN D. POMERANTZ (SBN 112503)
Glenn.Pomerantz@mto.com
KELLY M. KLAUS (SBN 161091)
Kelly.Klaus@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, Thirty-Fifth Floor
Los Angeles, CA 90071-1560
Tel: (213) 683-9100; Fax: (213) 687-3702

DANIEL E. ROBBINS (SBN 156934)
Dan_Robbins@mpaa.org
BENJAMIN S. SHEFFNER (SBN 212629)
Ben_Sheffner@mpaa.org
15301 Ventura Boulevard, Building E
Sherman Oaks, California 91403-3102
Tel: (818) 995-6600; Fax: (818) 285-4403

Attorneys for
Motion Picture Studio Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| WARNER BROS. ENTERTAINMENT INC., COLUMBIA PICTURES INDUSTRIES, INC., DISNEY ENTERPRISES, INC., PARAMOUNT PICTURES CORPORATION, TWENTIETH CENTURY FOX FILM CORPORATION, and UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,<br><br>Plaintiffs,<br><br>vs.<br><br>WTV SYSTEMS, INC. and WTV SYSTEMS, LLC d/b/a ZEDIVA, and VENKATESH SRINIVASAN,<br><br>Defendants. | **CASE NO. 2:11-cv-02817-JFW-E**<br><br>**SUPPLEMENTAL DECLARATION OF KELLY M. KLAUS IN SUPPORT OF MOTION PICTURE STUDIO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: July 25, 2011<br>Time: 1:30 p.m.<br>Judge: Hon. John F. Walter<br>Ctrm: 16<br><br>**[PUBLIC REDACTED VERSION]** |

I, Kelly M. Klaus, hereby declare:

1. I am a partner in the law firm of Munger, Tolles & Olson LLP, counsel of record to the Motion Picture Studio Plaintiffs: Warner Bros. Entertainment Inc., Columbia Pictures Industries, Inc., Disney Enterprises, Inc., Paramount Pictures Corporation, Twentieth Century Fox Film Corporation, and Universal City Studios Productions LLLP ("Plaintiffs" or "Studios"). I make this Supplemental Declaration based on my own personal knowledge, and if called upon to do so, I could and would testify competently to the matters stated herein.

2. Attached as Exhibit 47 are true and correct copies of the excerpts from the June 13, 2011 deposition of Thomas Gewecke cited in Plaintiffs' Reply in Support of Motion for Preliminary Injunction.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 27th day of June, 2011, at Los Angeles, California.

                                              *//s// Kelly M. Klaus*
                                              KELLY M. KLAUS

# EXHIBIT 47
# PUBLIC REDACTED VERSION

# In The Matter Of:

## WARNER BROS. ENTERTAINMENT INC.
### v.
## WTV SYSTEMS, INC.

---

### THOMAS GEWECKE - Vol. 1

### June 13, 2011

---

## CONFIDENTIAL
## ATTORNEYS' EYES ONLY

**MERRILL CORPORATION**
LegaLink, Inc.
135 Main Street
4th Floor
San Francisco, CA 94105
Phone: 415.357.4300
Fax: 415.357.4301

Exhibit 47
0133

CONFIDENTIAL - ATTORNEY'S EYES ONLY
THOMAS GEWECKE - 6/13/2011

Page 1

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| WARNER BROS. ENTERTAINMENT INC., ) <br> COLUMBIA PICTURES INDUSTRIES, ) <br> INC., DISNEY ENTERPRISES, INC., ) <br> PARAMOUNT PICTURES CORPORATION, ) <br> TWENTIETH CENTURY FOX FILM ) <br> CORPORATION, and UNIVERSAL CITY ) <br> STUDIOS PRODUCTIONS LLLP, ) <br>        Plaintiffs, ) <br>     vs. ) <br> WTV SYSTEMS, INC., and WTV ) <br> SYSTEMS, LLC d/b/a ZEDIVA, and ) <br> VENKATESH SRINIVASAN, ) <br>        Defendants. ) <br> ) <br> WTV SYSTEMS, INC. and WTV ) <br> SYSTEMS, LLC d/b/a ZEDIVA and ) <br> VENKATESH SRINIVASAN, ) <br>        Counterclaimants, ) <br>     vs. ) <br> WARNER BROS. ENTERTAINMENT INC. ) <br> COLUMBIA PICTURES INDUSTRIES, ) <br> INC. DISNEY ENTERPRISES, INC., ) <br> PARAMOUNT PICTURES CORPORATION, ) <br> TWENTIETH CENTURY FOX FILM ) <br> CORPORATION and UNIVERSAL CITY ) <br> STUDIOS PRODUCTIONS LLP, ) <br>        Counterdefendants. ) <br> ) | Case No. <br> 2:11-cv-02817- <br> JFW-E <br> Pages 1 to 137 <br> CONFIDENTIAL <br> ATTORNEY'S EYES <br> ONLY |

DEPOSITION OF THOMAS GEWECKE

TAKEN ON

MONDAY, JUNE 13, 2011


Reported by: PHILIP D. NORRIS

CSR NO. 4980

Merrill Corporation - San Francisco
800-869-9132                          www.merrillcorp.com/law
**Exhibit 47**
0134

CONFIDENTIAL - ATTORNEY'S EYES ONLY
THOMAS GEWECKE - 6/13/2011

Page 2

```
 1          Deposition of Thomas Gewecke, taken on
 2   behalf of Defendants and Counterclaimants WTV
 3   SYSTEMS, INC. f/k/a WTV SYSTEMS, LLC and VENKATESH
 4   SRINIVASAN, at 4000 Warner Boulevard, Burbank,
 5   California, on Monday, June 13, 2011, at 10:44 a.m.,
 6   before Philip D. Norris, CSR No. 4980, pursuant to
 7   Notice.
 8
 9   APPEARANCES:
10   FOR THE PLAINTIFFS AND COUNTERDEFENDANTS:
11          MUNGER TOLLES & OLSON, LLP
12          BY:  CAROLYN HOECKER LUEDTKE, ESQ.
13          560 Mission Street
14          27th Floor
15          San Francisco, California 94105-2907
16          (415) 512-4027
17              - and -
18          WARNER BROS. ENTERTAINMENT, INC.
19          BY:  JANET M. GRADY, ESQ.
20          4000 Warner Boulevard
21          Burbank, California 91522
22          (818) 954-2824
23
24
25
```

Merrill Corporation - San Francisco
800-869-9132                                 www.merrillcorp.com/law

**Exhibit 47**
0135

CONFIDENTIAL - ATTORNEY'S EYES ONLY
THOMAS GEWECKE - 6/13/2011

Page 3

```
 1
 2   APPEARANCES OF COUNSEL:
 3
 4   FOR THE DEFENDANTS AND COUNTERCLAIMANTS WTV SYSTEMS,
 5   INC. f/k/a WTV SYSTEMS, LLC and VENKATESH
 6   SRINIVASAN:
 7          DURIE TANGRI LLP
 8          BY:  JOSEPH C. GRATZ, ESQ.
 9          217 Leidesdorff Street
10          San Francisco, California 94111
11          (415) 362-6666
12
13   ALSO PRESENT:
14          ADAM D. SPERRY   (Videographer)
15          HANNAH SHEARER
16
17
18
19
20
21
22
23
24
25
```

CONFIDENTIAL - ATTORNEY'S EYES ONLY
THOMAS GEWECKE - 6/13/2011

Page 6

| | | |
|---|---|---|
| 1 | studio plaintiffs. | 10:45:18 |
| 2 | Also with me is an intern in our office, | 10:45:19 |
| 3 | Hannah Shearer. | 10:45:22 |
| 4 | MS. GRADY: Janet Grady from Warners Bros. | 10:45:23 |
| 5 | Entertainment, Inc. for the witness. | 10:45:25 |
| 6 | THE VIDEOGRAPHER: Thank you. | 10:45:27 |
| 7 | The court reporter today is Philip Norris | 10:45:27 |
| 8 | of Merrill Legal Solutions. | 10:45:30 |
| 9 | Would the reporter please swear in the | 10:45:31 |
| 10 | witness. | 10:45:33 |
| 11 | | 10:45:43 |
| 12 | THOMAS GEWECKE, | 10:44:21 |
| 13 | having been first duly sworn, was | 10:44:21 |
| 14 | examined and testified as follows: | 10:44:21 |
| 15 | | 10:44:21 |
| 16 | EXAMINATION | 10:44:21 |
| 17 | | 10:45:44 |
| 18 | BY MR. GRATZ: | 10:45:44 |
| 19 | Q. Good morning. | 10:45:44 |
| 20 | A. Morning. | 10:45:45 |
| 21 | Q. Could you state your name for the record, | 10:45:45 |
| 22 | please? | 10:45:47 |
| 23 | A. Thomas Gewecke. | 10:45:47 |
| 24 | Q. And it's pronounced -- just want to make | 10:45:49 |
| 25 | sure I get this right -- Gewecke? | 10:45:51 |

CONFIDENTIAL - ATTORNEY'S EYES ONLY
THOMAS GEWECKE - 6/13/2011

Page 82

| | | |
|---|---|---|
| 1 | our projections and tends to lower our projections | 12:32:48 |
| 2 | going forward. | 12:32:51 |
| 3 | Q.  Do you know whether the launch of Zediva | 12:32:52 |
| 4 | had any effect on the projections for sales in the | 12:32:55 |
| 5 | home entertainment window? | 12:32:58 |
| 6 | A.  I think that the launch of Zediva is | 12:33:00 |
| 7 | something that causes us great concern, and | 12:33:06 |
| 8 | certainly gives rise to a -- a fear that we might | 12:33:10 |
| 9 | have to reduce projections in the future. | 12:33:15 |
| 10 | Q.  Have you, in fact, reduced projections as a | 12:33:20 |
| 11 | result of the launch of Zediva? | 12:33:24 |
| 12 | A.  Again, I'm not in charge of all of the | 12:33:25 |
| 13 | projections, so I can't answer definitively whether | 12:33:27 |
| 14 | we have reduced projections as a result of any | 12:33:30 |
| 15 | one -- any particular cause or not.  I think that | 12:33:33 |
| 16 | when we think about Zediva, it causes us concern | 12:33:35 |
| 17 | that -- that the -- the proposition Zediva put in | 12:33:39 |
| 18 | the marketplace could undermine the entire ecosystem | 12:33:44 |
| 19 | around video on demand.  If that were to happen, we | 12:33:48 |
| 20 | would have to reduce our projections. | 12:33:50 |
| 21 | Q.  If the ecosystem were undermined, then you | 12:33:52 |
| 22 | would have to reduce your projections? | 12:33:59 |
| 23 | A.  Yeah, if the -- if the ecosystem were | 12:34:00 |
| 24 | undermined, if the -- if the -- if the presence of | 12:34:03 |
| 25 | Zediva had a negative effect on the rest of the | 12:34:08 |

Merrill Corporation - San Francisco
800-869-9132                              www.merrillcorp.com/law

Exhibit 47
0138

CONFIDENTIAL - ATTORNEY'S EYES ONLY
THOMAS GEWECKE - 6/13/2011

Page 83

```
 1   marketplace, which I think is very likely that it          12:34:10
 2   would, then we would have to reduce our projections.       12:34:14
 3        Q.   By how much would you reduce your                12:34:18
 4   projections if the presence of Zediva undermined the       12:34:20
 5   video on demand ecosystem?                                 12:34:35
 6        MS. LUEDTKE:  Objection.  Incomplete                  12:34:37
 7   hypothetical.                                              12:34:39
 8        THE WITNESS:  I think it's impossible to              12:34:39
 9   say how much we would reduce our projections by.           12:34:41
10   Very difficult to quantify the harm that would be          12:34:43
11   caused by -- by the launch of the service.  I think       12:34:46
12   that it would be very significant.  I think that           12:34:48
13   the -- the types of harm being caused and the kind         12:34:52
14   of undermining that would occur and the potential          12:34:55
15   negative effect on consumer spend is very                  12:34:58
16   substantial, so it causes a great amount of concern.       12:35:01
17   Very hard to know exactly how to measure it, though.       12:35:04
18   BY MR. GRATZ:                                              12:35:07
19        Q.   Could you measure it by multiplying the          12:35:09
20   number of movies watched on Zediva by $▮?                  12:35:11
21        A.   No, you could not do that.  I think that         12:35:17
22   would be the -- a very, very small starting point.         12:35:19
23   The kind of harm caused by the presence of the             12:35:24
24   service goes well beyond, you know, well beyond sort       12:35:26
25   of any -- any -- the harm of actual replacement            12:35:30
```

CONFIDENTIAL - ATTORNEY'S EYES ONLY
THOMAS GEWECKE - 6/13/2011

Page 84

| | | |
|---|---|---|
| 1 | units or sales. The consumer proposition that | 12:35:34 |
| 2 | Zediva purports to -- to make available to consumers | 12:35:37 |
| 3 | is -- is one -- is a, you know, streaming over the | 12:35:42 |
| 4 | Internet video on demand offering that is made | 12:35:46 |
| 5 | available on very different terms than -- than those | 12:35:50 |
| 6 | that are made available to other customers by other | 12:35:53 |
| 7 | VOD operators, and the existence of that kind of | 12:35:56 |
| 8 | offering, which is only possible because it's | 12:35:59 |
| 9 | unauthorized and unlicensed and therefore subject to | 12:36:01 |
| 10 | none of the terms that any of the other offerings | 12:36:05 |
| 11 | are subject to, the existence of that kind of | 12:36:09 |
| 12 | offering I think threatens to chill spending across | 12:36:11 |
| 13 | the entire video on demand category, and probably | 12:36:14 |
| 14 | across all sorts of other exploitations of | 12:36:17 |
| 15 | the content as well, and so we would be concerned | 12:36:20 |
| 16 | about the video on demand business. We would be | 12:36:22 |
| 17 | concerned about people buying fewer DVDs, and all | 12:36:25 |
| 18 | sorts of other harm of that type. | 12:36:29 |
| 19 | And I would submit that it goes well beyond | 12:36:33 |
| 20 | actual transactions on the service and, you know, | 12:36:36 |
| 21 | goes to the psychology and behavior of consumers who | 12:36:40 |
| 22 | may postpone purchases or defer them indefinitely | 12:36:46 |
| 23 | because they believe that there is a -- a different | 12:36:50 |
| 24 | offering on more favorable terms available to them | 12:36:55 |
| 25 | in the marketplace because of Zediva's marketing and | 12:36:58 |

CONFIDENTIAL - ATTORNEY'S EYES ONLY
THOMAS GEWECKE - 6/13/2011

Page 85

| | | |
|---|---|---|
| 1 | because of the way they characterize the service. | 12:37:01 |
| 2 | Q.  Does bricks-and-mortar video rental cause | 12:37:06 |
| 3 | harm to Warner Bros.? | 12:37:12 |
| 4 | MS. LUEDTKE:  Objection.  Vague and | 12:37:12 |
| 5 | ambiguous, incomplete hypothetical. | 12:37:14 |
| 6 | THE WITNESS:  I don't have a different | 12:37:18 |
| 7 | answer than that. | 12:37:19 |
| 8 | BY MR. GRATZ: | 12:37:20 |
| 9 | Q.  What would you need to know in order to | 12:37:22 |
| 10 | determine whether bricks-and-mortar video rental | 12:37:24 |
| 11 | caused harm to Warner Bros.? | 12:37:27 |
| 12 | MS. LUEDTKE:  Objection.  Incomplete | 12:37:29 |
| 13 | hypothetical, vague and ambiguous. | 12:37:31 |
| 14 | You can answer if you understand it. | 12:37:34 |
| 15 | THE WITNESS:  I don't really understand it. | 12:37:35 |
| 16 | BY MR. GRATZ: | 12:37:36 |
| 17 | Q.  If bricks-and-mortar video rental were no | 12:37:37 |
| 18 | longer one of the market options for home | 12:37:40 |
| 19 | entertainment, would Warner Bros. be better off or | 12:37:42 |
| 20 | worse off? | 12:37:46 |
| 21 | MS. LUEDTKE:  Objection.  Incomplete | 12:37:47 |
| 22 | hypothetical, vague and ambiguous. | 12:37:49 |
| 23 | THE WITNESS:  I don't -- I don't think I | 12:37:50 |
| 24 | have a way to answer that, and the reason is because | 12:37:51 |
| 25 | it really depends on the contractual terms | 12:37:53 |

Merrill Corporation - San Francisco
800-869-9132                                www.merrillcorp.com/law

**Exhibit 47**
**0141**

CONFIDENTIAL - ATTORNEY'S EYES ONLY
THOMAS GEWECKE - 6/13/2011

Page 99

| | | |
|---|---|---|
| 1 | data. | 12:58:38 |
| 2 | Q. In your declaration, you say that: | 12:58:39 |
| 3 | "Zediva risks interfering with Warner's | 12:58:49 |
| 4 | contractual commitments and its relationship | 12:58:54 |
| 5 | with its licensees and its ability to negotiate | 12:58:56 |
| 6 | similar deals in the future." | 12:59:00 |
| 7 | Do you see that? | 12:59:01 |
| 8 | A. Yes, uh-huh. | 12:59:02 |
| 9 | Q. Has Zediva had such an effect so far? | 12:59:03 |
| 10 | A. We have been -- we've gotten calls from | 12:59:10 |
| 11 | and -- and have been queried by various retail | 12:59:15 |
| 12 | partners who have questioned why it is that Zediva | 12:59:19 |
| 13 | is allowed to operate and -- from our perspective -- | 12:59:23 |
| 14 | and expressed concern about the fact Zediva is | 12:59:28 |
| 15 | making available a -- an offering on terms that they | 12:59:30 |
| 16 | cannot, and pretty directly expressed their concern | 12:59:34 |
| 17 | that -- that, you know, were this allowed to | 12:59:40 |
| 18 | continue, it would be harmful to their business and | 12:59:45 |
| 19 | therefore complicate our ability to be in business | 12:59:47 |
| 20 | with them. | 12:59:51 |
| 21 | Q. What retailers were those? | 12:59:52 |
| 22 | A. Again, confidentiality -- confidentially, | 12:59:55 |
| 23 | two that I'll mention are ███████████. █ | 12:59:59 |
| 24 | ████████████████████████████ | 13:00:02 |
| 25 | ██████████ | 13:00:05 |

CONFIDENTIAL - ATTORNEY'S EYES ONLY
THOMAS GEWECKE - 6/13/2011

Page 100

```
 1        Q.   Any others?                                        13:00:06
 2        A.   Those are the two that come to mind.               13:00:06
 3        Q.   When did ▓▓▓ first contact you about               13:00:08
 4   Zediva?                                                      13:00:15
 5        A.   I believe that conversation was shortly            13:00:17
 6   after the public -- the announcement about the beta          13:00:20
 7   or the public launch of the service in March of this         13:00:26
 8   year.                                                        13:00:34
 9        Q.   And who at ▓▓▓ was that conversation               13:00:34
10   with?                                                        13:00:36
11        A.   Again, confidentially, ▓▓▓.                        13:00:36
12        Q.   Was it a phone con?                                13:00:43
13        A.   Phone conversation, yes.                           13:00:46
14        Q.   What did you tell ▓▓▓?                             13:00:47
15        A.   Expressed the point of view that the               13:00:53
16   service was completely unauthorized, confirmed that          13:00:57
17   we did not have a license agreement in place,                13:00:59
18   confirmed that the terms that -- the terms of -- the         13:01:01
19   service was operating under were not authorized by           13:01:05
20   us, and expressed a great deal of concern about it.          13:01:07
21        Q.   Did ▓▓▓ ask you to take any action?                13:01:10
22        A.   No.  I think they assumed whatever action          13:01:23
23   was appropriate would be taken in the normal course          13:01:33
24   of business, that we would seek to defend our                13:01:39
25   copyrights and seek to -- you know, that we -- in            13:01:41
```

CONFIDENTIAL - ATTORNEY'S EYES ONLY
THOMAS GEWECKE - 6/13/2011

Page 101

| | | |
|---|---|---|
| 1 | the ordinary course of business seek to cause anyone | 13:01:45 |
| 2 | who is not a licensed, you know, operator to cease | 13:01:49 |
| 3 | violating our copyright. | 13:01:55 |
| 4 | Q.  Did ▮ ask for any modifications to its | 13:01:57 |
| 5 | contract terms in connection with this | 13:02:01 |
| 6 | communication? | 13:02:04 |
| 7 | A.  Not yet. | 13:02:05 |
| 8 | Q.  Do you think they're going to? | 13:02:05 |
| 9 | A.  I think that if the service is allowed to | 13:02:09 |
| 10 | operate or continues to operate and to exist, I | 13:02:11 |
| 11 | think it's entirely possible.  I think we would see | 13:02:14 |
| 12 | very negative reactions from all of our retailers, | 13:02:17 |
| 13 | not just ▮.  I think that a very logical | 13:02:20 |
| 14 | consequence of anyone with whom we have a licensed | 13:02:23 |
| 15 | VOD offering would be to ask us to make the offering | 13:02:27 |
| 16 | available on the same terms that Zediva or on terms | 13:02:31 |
| 17 | that would allow them to offer the same terms as | 13:02:34 |
| 18 | Zediva. | 13:02:37 |
| 19 | We would not be able to do so for | 13:02:39 |
| 20 | commercial and for contractual reasons as discussed, | 13:02:43 |
| 21 | so I think it's a very, very logical, near-term | 13:02:45 |
| 22 | consequence of -- of any continued operation of the | 13:02:49 |
| 23 | Zediva service. | 13:02:53 |
| 24 | Q.  But it hasn't happened yet? | 13:02:54 |
| 25 | A.  Not to date, no. | 13:02:56 |

Merrill Corporation - San Francisco
800-869-9132                         www.merrillcorp.com/law

**Exhibit 47**
0144

CONFIDENTIAL - ATTORNEY'S EYES ONLY
THOMAS GEWECKE - 6/13/2011

Page 137

```
 1    STATE OF CALIFORNIA        )
 2    COUNTY OF LOS ANGELES      )  ss.
 3
 4         I, Philip D. Norris, a Certified Shorthand
 5    Reporter for the State of California, do hereby
 6    certify:
 7         I am the deposition officer that
 8    stenographically recorded the testimony in the
 9    foregoing deposition;
10         Prior to being examined the deponent was
11    first duly worn by me;
12         The foregoing transcript is a true record
13    of the testimony given;
14         Before completion of the deposition, review
15    of the transcript [ X ] was [   ] was not requested.
16    If requested, any changes made by the deponent (and
17    provided to the reporter) during the period allowed
18    are appended.
19
20    Dated  June 14, 2011
21
22                       [signature]
23                       Philip D. Norris
                         CSR NO. 4980
24
25
```

Exhibit 47
0145